(No. 4188

EARL SPENCER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 14, 1950.*

HAROLD T. BERG, Attorney for Claimant.

IVAN A. ELLIOTT, Attorney General; WILLIAM H. SUMPTER, Assistant Attorney General, for Respondent.

SCHUMAN, C. J.

Claimant, Earl Spencer, was employed by the State of Illinois at the Elgin State Hospital, Elgin, Illinois, and

on November 22, 1948 claimant sustained an injury while in the course of his employment. No jurisdictional question is raised. Respondent and claimant were operating under the Workmen's Compensation Act and the accident arose out of and in the course of his employment. Respondent furnished complete surgical, medical and hospital treatment except for the expenditure of $13.70 for a body brace.

That the earnings of the claimant during the year preceding the injury were $2,100. Claimant received his full salary of $175.00 per month for full time from the date of the accident to the present time. No claim is made on the grounds of temporary total disability. At the time of the accident claimant had no children under the age of 16 years and the sole question for adjudication is the nature and extent of his injury.

Claimant, Earl Spencer, 64 years of age, was employed by respondent on November 22, 1948, as a farm hand at the Elgin State Hospital in the Department of Public Welfare. It was the duty of the claimant to take a group of patients to the farm, operated as a part of the institution, and direct and supervise their work. Engaged in this capacity claimant would ride in a wagon towed by a tractor back and forth from the farm area, about a mile distant from the hospital. The wagon was not equipped with seats. At the close of the above day, while sitting on the floor of the wagon as it was returning from the farm over a dirt road located on the grounds of the hospital, the wagon struck a hole. The claimant was thrown in the air and fell injuring his back on the floor of the wagon. He was helped out of the wagon by the tractor driver and his assistant and laid on the grass beside the road. The farm boss, Hubert Draper, came with an automobile and took claimant to his room. The

next morning he was taken in an ambulance to the Elgin State Hospital where he was X-rayed and examined by Dr. Hudell, a staff physician and surgeon. On December 4th claimant was put in a body cast and on December 6th he was taken home. Claimant wore the cast for 12 weeks, returning to his employment on February 28th.

The facts show that the claimant is now wearing a corset or brace on his back which prevents him from tiring, provides support, lessening his pain; that claimant at the time of the hearing was suffering from a backache, but that he still performs the same work for the respondent. Claimant further testified that he experienced pain when he stoops or bends and is prevented from lifting heavy objects and that he was required to sleep with a board under his mattress, and that his condition has not improved much during the last two or three months.

Dr. Albert C. Field testified for claimant as an expert witness and described his objective findings as limitation of motion in claimant's back, as well as tenderness, muscle rigidity and muscle spasms in the lumbar region above the lumbar lordosis and tenderness of both sciatic nerves in both thighs. Dr. Field interpreted an X-ray film which he took of claimant's back and stated:

"———which shows a compression fracture of the first lumbar and vertebral narrowing of the anterior region with some evidence of bony injuries to both the superior and inferior articulating surfaces of the vertebrae. In other words, shows he had a chip fracture in addition to his compression fracture of both of the articulating surfaces of the superior and inferior region, which is a comminuted fracture of the first lumbar vertebrae."

Dr. Field described claimant's condition as having a fairly well healed compression fracture of the first

lumbar vertebrae. He said claimant would have considerable permanent disability because the anterior surface of the vertebrae is narrowed, putting the weight bearing surface out of line and placing it under a stress and strain of the ligaments and tendons, especially the intercostal nerves in the lumbar region as well as the ilio-hypogastric nerve and the ilio-inguinal nerve. It was the opinion of Dr. Field that claimant suffered a traumatic arthritis due to the accident and resulting from roughness of the articulation of the vertebrae due to the chip or evulsion of the first lumbar vertebrae. He predicted considerable weakness in claimant's back because of the altering of the attachment of muscles. It was the opinion of Dr. Field that the injury to the lumbar region of claimant's back affected his lower extremities to the degree of about 30% loss of use of each leg. He stated, however, that claimant would not be limited in the course of his present supervisory work unless he attempted to do any lifting.

Dr. John C. Hudell, physician and surgeon, treated claimant for his injuries. Dr. Hudell, witness for the respondent, is on the medical staff of the Elgin State Hospital and is engaged in the general practice of medicine including central administration of medicine and the performance of whatever surgical procedure may be necessary to treat illnesses of patients at the hospital. He first began treating claimant on November 24, 1948. He stated X-rays at the time disclosed him to have suffered a mild compression fracture of the body of the first lumbar vertebrae with no dislocation of the articular surfaces or rotation of the vertebrae. There was an evulsion of a chip or small segment of the anterior and superior lip of the first lumbar vertebrae. Neurological examination was negative. Claimant's fracture was reduced by hypraextension of the back and he was placed in a cast on De-

cember 4th. Dr. Hudell said claimant was comfortable and walked well in his cast. Mr. Spencer was then discharged to out-patient care. Thereafter further X-rays were taken at one month intervals. Dr. Hudell stated claimant wore the body cast for twelve weeks when he was discharged from the care of the hospital and placed in physio-therapy treatment and diathermy exercises.

Dr. Hudell said it would be difficult to estimate how long claimant would be required a wear the brace he now uses. Dr. Hudell qualified his statement that subsequent X-rays failed to reveal any abnormality by adding that he could not say there was no evidence of strain or tenderness. With the passage of time Dr. Hudell stated there would only be a minimal disability of claimant—a small amount of pain in the performance of his duties but not enough to physically disable a man from his chosen avocation. Dr. Hudell stated claimant might be handicapped in lifting heavy objects. Dr. Hudell testified that while claimant has a light limitation of flexion of his leg from a prone position that he can rotate his trunk freely; that hypra-extension is within normal limits and that his spine is straight with no evidence of kyphoses, bending of the spine backwards, or lordosis, bending of the spine forwards, or of bending the spine to the side.

The Court finds that William J. Cleary & Co. has rendered stenographic services in the amount of $129.70, which charge is fair and reasonable.

The Court concludes from the evidence that while there is no specific evidence with reference to any specific loss in this case from the medical testimony and the examination by the Commissioner, that the claimant has suffered some degree of permanent disability affecting his limbs. The Court concludes from the evidence that

the claimant has sustained a permanent partial specific loss to the extent of 10% of use of both legs.

The evidence shows that the claimant expended the sum of $13.70 for a back brace. That all the other hospital and medical expenses were paid by the respondent.

The record shows claimant was paid full time during period of temporary total disability in the amount of $565.41 for a period of 14 weeks. His compensation during said period would have been $273.00. He was therefore overpaid in the amount of $292.41, which will have to be deducted from the award.

On the basis of this record we make the following award:

Ten per cent permanent partial specific loss of use of both legs, the sum of $741.00, less the sum of $292.41, or in the amount of $448.59, all of which is accrued and is payable forthwith.

An award of $13.70 for brace purchased by claimant.

An award is also entered in favor of William J. Cleary & Co. for stenographic services in the amount of $129.70, which is payable forthwith and the Court finds that said charge is reasonable and said claim is allowed.

This award is subject to the approval of the Governor, as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees".